mutual account of the orogo insurance company recommendation 19-15 9265 Mr. Dysko org tavalla, Waskowski v. State Farm mutual account of the orogo insurance company 752.15 9265 Mr. Dysko or the DoA Good morning, Your Honors. I'd like to reserve five minutes for rebuttal, if I might. Very good. I'm not going to be long-winded, Your Honors. I think this is a very straightforward, relatively narrow issue, but I want to point out and highlight a couple of things. Verdicts are supposed to be clear and understandable. We're not supposed to be able to or have to argue and interpret what the jury decided, and that's what we have in this case. We had District Judge Sean Cox say, clearly this is what the jury did. Did you object to those instructions? No, not to the instructions, and I don't think this is an instruction issue at all. This is what this is gets down to what the jury decided, Your Honor, that in fact when the jury made a determination of everything up to the amount, including the finding of liability, I think the instructions were okay. It's just what the jury did with them that created this inconsistency. I think if the jury had followed what they were supposed to do, there would have been an amount, not a zero, and that's the issue because there was undisputed evidence of the benefits. And you saw the jury, you saw this special verdict, did you not, and didn't object to it? No, the verdict was the standard form, and again I don't think the problem was with the verdict form. I mean that's the standard Michigan verdict form with the extraneous stuff taken out. And no, there was an objection because, again, I think it was the appropriate form in these types of cases. It's just when you have to go beyond the form and look at what was presented, and what was presented was a causation defense, and a defense, to the extent the benefits were even attacked, it was whether they were incurred. But you had the burden of proving your damages. I mean a causation defense doesn't mean you're therefore entitled to every penny you argued. You still, the jury would still have to believe you carried your burden. And here, I mean correct me if I'm wrong, but here they would have to conclude that you proved actually more than $169,000 in damages, which is what your client had already been paid. Well, that's interesting. Is that a correct line of reasoning or not? Not really because that wasn't even before the jury. How so? I mean $169,000 came in at trial. Well, I don't believe it did. That was in a joint exhibit that was never introduced at trial. The prior payments were not introduced. The evidence that was presented at trial had to do with what was incurred post-cutoff. You see, that's the issue you get. Wait a minute. How could that be so? Because there was evidence as to the money that was paid, the daughters for the care of your client and other things. So, I mean, there was testimony about what State Farm had paid. There was some testimony about what happened before in going to a, you know, and there was some testimony about the rate. The issue that was decided and presented to the jury, Your Honor, however, was whether post-cutoff, post-IME cutoffs, whether there were damages sustained, whether there were benefits incurred. The jury wasn't asked to decide where all these prior payments incurred. Those weren't even at issue. And that's the whole point of this, whether there was evidence presented that they paid or not. And this is a standard, you know, this is a standard insurance company trick. Hey, we paid, you know, we don't owe anything else because we paid a bunch of money. That's not the issue. And we see it in all of these cases. But you had to prove your damages exceeded what he already got. And there were $300,000. Fair. But maybe the jury didn't believe that. There was no evidence that the client was malingering. Well, and the jury rejected that by saying that he incurred amounts. I mean, the jury. But maybe less than $168,000. Well, I don't see how that could be, Your Honor, given that the jury was presented, or the jury had to decide the post-cutoff issue. The incurred question was not about did you incur stuff before? It was after items were cut off. Did you incur anything? That's the liability portion of the No-Fault Act. And frankly, the fact that we're debating what could possibly have done or what the jury could possibly have done, I think, points out the exact issue of it's not clear. Well, apparently, they didn't think too much of the damages. I mean, that's fair, isn't it? I mean, it's not like they forgot. Well, I can't say that, Your Honor. Or your client $300,000. I can't say that they didn't think much of the damages. Well, I mean, why wouldn't we say that? They awarded zero. They awarded zero. I mean, after a trial, everybody got to put in their evidence. They could have been confused, and that's the whole point of the contradictory. How would they have been confused if the instructions were clear? Well, it doesn't make sense. You say that something was incurred post-cutoff. He incurred benefits. Zero makes no sense. If you are liable to pay something. And there was uncontradicted evidence of what the amounts of the benefits were. What if they said $1? I mean, is that answer your? I mean, I'm not trying to be flippant, really. I mean, if they said $1, nominal damages, then we don't have this conversation, I guess, right? I don't think. No, I think we still have that conversation because $1 still wouldn't make sense. When you decide that he incurred all these, he incurred benefits post-cutoff, you know, this isn't the constitutional damage case. I think that, you know, the example I set in my brief, you know, I think that's a hard issue at that point. I think, I still think we're still here, and I think there's still that confusion with the jury. The confusion when the special verdict says, if your answer is yes, that he was injured, what is the amount of allowable expenses owed to the plaintiff include only expenses not already paid by the defendant? How much clearer could it be? Well, I think, again, you have to look at the entire record you're on and look at what was presented, what the jury had to decide. When they answered question three about what was incurred, I think that's where, you know, they're deciding post-cutoff determinations, you know, or post-cutoff benefits. So the extent that anything that was paid was prior to the cutoff. And that part of the form or that part of the question, I think, usually comes up when you have underpayment cases in these types of first-party no-fault cases. Usually that's what's going to happen is when you have it, or if you have evidence presented specifically of what was prior paid, you know, all the prior payments, and somehow that becomes an issue, and that's part of the defense that, hey, we overpaid. And you see that in their brief, but there was no evidence of that. You know, we overpaid on the work loss. Well, again, the jury was not allowed or was not required to answer those questions. The question they were answering was, what happened post-cutoff? And that's where you end up with, it just doesn't jive, just doesn't make sense. And I think that's where we, and again, I think the fact that we're debating all this, and, you know, I see, if you look at, you know, in State Farm's brief, there's really very little in the record, actual evidence in the record, that they talk about. And they say, well, we challenged, you know, his condition, we challenged his needs, we challenged, you know, whether he actually got bathing or the amount of attendant care. That all goes to whether it was incurred, not to the amount. And the jury, once you make that determination, they made that determination. They were presented, hey, you can only award over 160,000. That wasn't the issue. The issue was post-cutoff and what was incurred during that time. And that's where you get into the issue. And I think, and all of that evidence was uncontradicted. I mean, they took their shot. They took the solo shot of saying, you know what, you're not hurt from this accident. That's what our RME said. And, you know, they tried to throw out some things about whether he incurred the benefits, and it didn't work. Well, I mean, it's your burden to prove the damage. It's not theirs to disprove it. So that they didn't try to disprove it doesn't mean you're entitled to it. No, but I think we did prove it. That's the whole point. But the jury may not have felt that. Well, there may be a lot of reasons that, I can come up with a lot of reasons that may explain what the jury did. I mean, but the problem is we don't know and we should know from the verdict form. I mean, they may not have liked my client. Okay, but the reason I suggested is the real reason. And, I mean, we don't like reverse jury verdicts if there is a conceivable ground on which they were confused and should have awarded. To the contrary, I think if there's a conceivable ground that, you know, is consistent, then it's sort of that's the end of the inquiry. Well, but I think this is a little different than that usual case. Again, there was evidence presented and the jury found liability. They found that benefits were incurred. What they decided was zero amount. I can't rationally explain that. And I think the argument, Judge Klessler, that you're making there or the suggestion is just very difficult to grasp that the jury could say, yeah, you're liable, you incurred, which means in the no-fault context, that means that you actually incurred that expense. You know, we had medical, I mean, we had, what, 40,000 in medical bills alone. Okay. Let me answer my question. I understand. I do understand your argument. And I think that's what it comes down to, that this is one of those unusual cases. I mean, we try a lot of these cases and, you know, I really haven't seen this before in this kind where you get that incurred question answered. If you want to keep your time. Okay, thank you. Thanks. Good morning. May it please the court, Stacey Enonen on behalf of State Farm. Your Honors, clearly we, or State Farm's position is that there's nothing inconsistent with this verdict. Among other things, the jury heard testimony from Mr. Wyskowski concerning the accident, concerning damages to his vehicle. The jury heard testimony from Dr. Geringer, stating that he could not relate any of Mr. Wyskowski's pain complaints to anything from the December accident. But they also heard testimony from Dr. Geringer, indicating that he certainly could have been bounced around in the accident and aches and pains were undoubtedly there. Now, on the verdict form, and Judge Norris, you quoted part of it, the jury was only generically asked, did Mr. Wyskowski or did the plaintiff sustain an accidental bodily injury arising out of the use operation or maintenance of a motor vehicle? That, it answered yes. But the jury was not asked to delineate what injury it was. It was not asked to delineate the length of time this injury was ongoing. And as you recognize, Judge Norris, neither the verdict form was objected to, nor any of the jury instructions. Given the circumstances, and there was testimony in the record concerning previous payments that State Farm made, and particularly with regard to overpayments concerning wage loss. Given that testimony, then the verdict form appropriately tracks what the jury's asked to do. Was there an injury? Were expenses incurred? Is anything owed? In deciding if anything is owed, award only those expenses which have not already been paid. In this case, to the extent the jury found that there was an injury, they determined that State Farm had already paid everything from it. With regard to the scope of State Farm's defense at trial, State Farm contested everything. Clearly, causation was an issue, but also damages were contested throughout the case as well. State Farm did not offer an alternate amount of damages to the jury. It's not required to, but it contested it in different ways, such as overpayments on wage loss that were made. It contested demands from the attending care providers. Did you guys... I understand there was an alleged overpayment of $16,000 about, is that right? With regard to the wage loss. And is that something you put in front of the jury, just out of curiosity? Yes. Yes. But they knew that? And the claim representative testified to that on... I believe she was called as a witness in Plano's case in chief. Okay. When counsel for State Farm questioned her, that came out. And it was again reiterated to the jury during closing arguments to consider. And in addition to the wage loss itself, State Farm contested the attendant care payments because the attendant care providers were charging State Farm for services, which they came out during trial testimony, that were never provided, were not needed for Mr. Wyskowski. That's specifically with regard to bathing. So the list goes on. And also what it turns on actually is the credibility of the attendant care and service providers, as well as Mr. Wyskowski. So whether Mr. Wyskowski and these individuals were entitled to anything when they're claiming attendant care for services that weren't necessary, or when Mr. Wyskowski even was clutching his arm to his chest during the trial, whereas his physical therapist was demonstrating to the jury the range of motion he actually had and observed Mr. Wyskowski having. So I don't believe State Farm's required to proffer a alternate dollar amount that the jury should consider if it's going to contest damages. Based on the credibility, the jury simply could have said, you're not entitled to a penny. Unless your honors have any questions, that concludes everything that I have. Thank you. Thank you, Allie. I'll be real brief. I think that sort of the last things we heard goes to exactly the issue. We heard about credibility. Mr. Heinen had said there was credibility issues and that they contested damages. It all goes to whether they were incurred. And back to your point, Judge Kethledge, about plausibility. If, in fact, what State Farm is saying is the explanation, then what doesn't make sense is that the jury answered yes to the incurred question. Well, they admitted liability, in essence, when they put it. They paid, what, $168,000? Well... How could liability even be at issue in that? Well, they contested it. That's the whole issue. They said there is no more... Unlike damages is what they were... Well, they contested causation and cut off. They cut off and said, we don't know, that's liability. The incurred question, your honor, goes to the liability issue. And I think that's really the question of, yeah, even if you arguably could say, well, the damages are plausible, the zero damages are plausible, if you say that, the incurred part is not plausible. And that's the whole issue. They decided, they contested liability, the jury found that liability existed and then created and gave this zero. And you heard the admission, we didn't contest the amount of damages. The jury didn't buy the whole credibility issue, because otherwise they could not have checked the incurred box. And I think that for those reasons, the verdict should be overturned. We should get a new trial and or editor for all the reasons set forth. Thank you. Thank you. Alright, thank you. And the case is submitted.